here today. And I'll remind you of a just the benefit of those who have not argued here before. We do have that lighting system. And when the yellow light comes on, that means you have two minutes to complete your argument. And when the red light comes on, that does mean that your argument is completed. Finish your sentence, but don't linger too long. These arguments are being recorded for the purpose of assisting us in writing any kind of opinions that may come out of these proceedings, but also they're available to the public and they're available to the public online. And so you need to give the public your best performance in us as well. Finally, I would mention to you that rebuttal is for rebuttal only. And we ask that you not bring up any subject in either by you or your opponent. So with that, we'll call the first case of the day. And that is United States of America v. Myron Saunders and Lamar Nero. And we'll hear from Mr. Plaisance. I think the second issue that we brought up, Your Honor, is a key issue that can protect the whole case. It's our opinion that the erroneous verdict form prejudiced the defendants in this case such that they did not get a trial under the assumption of the reasonable doubt belief that we all enjoy when we go to court. There's no doubt in this case that the verdict form listed at least twelve times the language that in order to find the defendants not guilty, they must do so by a reasonable doubt. That is not the law of this country. It's not the law of the circuit anywhere to where a jury has to find you not guilty beyond a reasonable doubt. You know, we know that, I guess, but the question here is, is it plain error? And the district court did correct the matter, or at least say corrected. He gave specific instructions that were consistent with the law. So in order for it to be plain error, the error has to be plain to the judge, and our law says that you can correct these kind of things with proper instructions. So how is it plain error? Well, I think it was plain error because, obviously, the wording is incorrect. I think we can agree to that. I grant you that the trial court did instruct the jury properly. I'm not sure that the court needs to consider, though, that a jury verdict form is part and parcel of the instructions. So at this point, we have, I think that the government alludes to the fact that nineteen times the court gave instructions, and I'm arguing that twelve times this particular wording was on the jury verdict form. So here we have thirty-one mixed messages being sent to the defendants, not guilty in this case. I think it becomes plain error because it requires the jury to find beyond a reasonable doubt the defendants not guilty. It removes the presumption that we go to trial of being innocent. It removes the presumption that the government . . . Not innocent. Well . . . Not guilty. That the government must prove beyond a reasonable doubt that we are guilty. Correct. And I think it removes that presumption by the way it's worded. I mean, granted, there are jury instructions. A jury listens to jury instructions, of course. Well, the jury followed the instructions here. They found him guilty beyond a reasonable doubt. Well, but . . . And then followed the instructions, I guess, because they acquitted him on one . . . didn't they acquit him on one count? They acquitted him on one count. That's correct. The instructions were perfectly followed by the jury. I don't know if we can presume or assume that, Your Honor. We were not part of those twelve people sitting there or six people sitting there listening to those instructions and reading that form. You know, just reading . . . and I guess that is what's tough on the appellate level. We're reading a cold record and trying to part and parcel what people thought. And that does make it difficult, but I think that's why we have standards that require the language on forms or on verdict forms that we present to juries be made so clear that there is no question whether or not the . . . they followed the instructions or not. You know, there are mixed messages. There's nineteen instances, granted, that the judge read the instructions correctly. There were twelve instances, I argue, that the verdict form is not correct. And I think it needs to be taken together. It removes that presumption from the trial and, you know, our law has said that it's fundamental in criminal law that the defendant has . . . that the government has that burden and they must prove that burden. I think it affected the substance of the substantial rights of the defendants in this case because of what it did. There are a couple of cases that the government cited . . . How did it affect the substantial rights? Well, it gives the jury a different perspective on how they must judge the defendant. Instead of we're always told the burden is on the government to prove beyond the reasonable doubt the defendant is guilty. So here I am now sitting as a juror and suddenly I have a piece of paper in front of me with words that say in order to find him not guilty . . . You said the verdict would have been different in this case? Do you have any evidence other than just speculation that the verdict would have been different? But I think that therein lies the problem with the way the form is and why he should be entitled to a new trial with the proper verbiage on the form and then we'll know. This is a substantial error in this case that affects the defendant's rights to a trial where the burden is placed on the government. The second issue I'd like to address in this case is the failure to grant a mistrial for the fear or the actions or the projected fear of the third juror. Obviously the record indicates that at one time Juror 5 expressed her fear and wrote a note. Juror 5 talked to other jurors. After doing an extensive examination of the jurors in chambers, the court excused Juror Number 5 and ultimately excused Juror Number 6. The judge did not excuse Juror Number 11, which we believe should have also been excused. The judge did note in her statement or her post-trial rulings based on post-trial motions that she was, quote, on the fence with him. I think that is enough to have put the court on notice that there was reason to believe Juror Number 11 was as affected as Juror Number 5 and Juror Number 6. But the court should have also dismissed that juror and by not doing so allowed a juror to sit there with some sort of fear or apprehension about what was taking place and what his duties prescribed. I think the judge may have mistaken that position and should have moved that juror also. At this point, if there's no more questions, I will leave the balance of my time for my co-counsel. Okay, thank you, Mr. Plessens. Mr. Byrd, representing, you're the, representing Ms. Nero. Your Honor, may it please the court, my name is Jordan Seibert and I do represent Mr. Nero, who is the co-defendant in this case. And I would like to just pivot and talk briefly about the instructional error on the aiding and abetting the 924C count, which was count three. The 924C count had to do with using a firearm or carrying a firearm during in relation to a crime of violence, which was specifically the bank robbery in count two, which was the first bank robbery. So it's very significant that it's the first bank robbery because the district court in this case failed to instruct the jury, as it was required to do under recent Supreme Court case law, Roseman v. United States, that in order to convict Mr. Nero, the jury had to find that he had advanced knowledge under the aiding and abetting theory, that he had advanced knowledge that Mr. Saunders would be carrying a firearm. How did you reconcile that with the Pinkerton charge? Well, the Pinkerton test focuses on whether it was foreseeable to Mr. Nero that Mr. Saunders would have a firearm. So again, we go to the fact that this is the first robbery. If this was the third robbery and he had done this twice with him before, then that would make it foreseeable. This is the first robbery. And we cite statistics in our reply brief that showed the vast majority of bank robberies don't even involve a firearm. So there's no email, there's no wiretap, there's no jailhouse confession, no confession to a police officer, nothing to show that he had advanced knowledge that his co-defendant would carry a firearm. And under Pinkerton, there's simply nothing to show that he, that it was foreseeable to him that his co-defendant... He joined a conspiracy, right? You acknowledge that at the time we're talking about, he had joined the conspiracy to rob banks. And you're saying that it was not foreseeable that to rob a bank, a gun might be used. I don't think... Well, first of all, the question is not just whether there's another theory that has sufficient evidence. The question under the third prong of the plain error standard is whether there's a reasonable probability that, but for the instructional error, the jury still would have convicted him. Is there a reasonable probability of a different outcome? So it's not enough just to say, oh, we can find some evidence in the record to support a conviction under a different theory. The question is whether there's... Why isn't that... Given the fact that we have to view the jury verdict in the light most favorable to the verdict, why isn't that the case that the jury could have relied upon another theory? Well, I think the court does have to view the verdict, view the evidence in the light most favorable to the verdict when it's reviewing a sufficiency claim. But this is not a sufficiency claim. This is a claim of instructional error as to the elements of an offense, the essential elements of a crime. And it implicates the defendant's constitutional rights when the jury is relieved of its obligation of finding each and every one of those elements before convicting the defendant. So it is a distinct test when it's an instructional error as opposed to a sufficiency claim. And I think that's one way in which the government is a little off the mark in their briefing. They say, well, look, there's enough to show that he could have been convicted under Pinkerton or as a principal. I take issue with both of those claims, but in any event, the test that they seem to be putting forth is not the right test. The test is whether there's a reasonable probability of a different outcome. And I think in this case there is. For one thing, the government relied heavily on the aiding and abetting theory when it made its closing argument. And so for all of those reasons, I would ask this court to vacate that conviction, which resulted in a five-year mandatory consecutive sentence and remand. Thank you, Mr. Sarban. Okay, we'll hear from the government now. Okay. Coach. Okay. Diane Copes on behalf of the government and with me, trial counsel Brian Ebarb and Nolan Page. Your Honor, the verdict form never deviated from saying that the government had the burden of proof to prove not guilty beyond a reasonable doubt. That was enforced, as Mr. Plaisance emphasized, by 19 instructions by the district court. But there's additional evidence and argument. The defense and the government both argued in their opening and closing at least a dozen times the correct standard of beyond reasonable doubt. Mr. Chaney, in both opening and closing, and he represented Mr. Nero, he also used the same instruction. In the preliminary instructions, pattern 1.01 said the defendant is presumed innocent until proven guilty. Starts with a clean slate. Burden of proof on the government until the very end beyond a reasonable doubt. Judge Brown used this instruction in her preliminaries. In her close, the final verdict charge, she again said the defendant is presumed by law to be innocent. Begins with a clean slate. Does not have to prove his innocence. The government has the burden of proving guilt beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant. Mr. Chaney echoed those definitions in some detail both in opening and in closing and in voir dire even. Jurors are asked, can you assume that the defendant is presumed innocent and apply that standard? That is one of the key questions in determining whether jurors can serve. For all of these reasons, there was no confusion on the part of the jury. If you look at what this is, this is plain error. It wasn't brought up until the new trial motion after the proceedings were completed, the trial proceedings. She said, your experience, counsel, you didn't notice it. Why didn't you bring it to my attention? In the 100 pages of charge conference and many pages where the language of the verdict form was discussed, you didn't mention it. She says, this was a very inquisitive jury. They asked lots of questions. If they had been confused on this point, I think they would have said something, and the jury was polled at the end. Each one found unanimous. She also found, although it's not presumed innocent until the government proves beyond a reasonable doubt the defendant's guilt, it's almost just a part of the lexicon of our society. She would have been surprised if anybody would have been confused by it. The cases say that where there's a proper jury instruction, and in this case, many of them, that can eliminate confusion in the face of this very case. I understand that there is a state case that I haven't had a chance to look at that was handed to me this morning that perhaps finds a different conclusion, but the important thing to look at is what was the overall totality of circumstances and was the confusion cleared up by these multiple instructions? The government submits that it was. Indeed, Judge Brown said, not only did you not bring it to my attention, but defense, I thought it helped you. I thought that you liked the fact that the beyond a reasonable doubt language was in there. You'll see this at her discussion of the verdict form, both in a lengthy order and reasons, denying the new trial motion, starting at page 799, and then at another discussion of it, of her findings at 2770. You'll see in this case that Judge Brown often buttressed any decision she made with order and reasons. She did this here, she did it on sentencing, and she spent almost 100 pages, 1703 to 97, on the Juror 11 issue. The Juror 11 issue was explored thoroughly. In fact, she commented that to the defense and the government, I feel like if I don't do an individual inquiry of each defendant at this time, that that would be reversible error. This is different from the Simtop case, cited by the defense, where one of the jurors was eyeballing and there was no inquiry. She did a full inquiry because she wanted to be complete and thorough. Juror 11 came up, just like any other jurors, and he said, it was in the back of my mind like everything else. Is it going to affect your deliberations? No, it won't. 1772. Can you still be fair to both sides, even with that in the back of your mind, and weigh the evidence? Right. I can weigh the evidence with the evidence I could be. This is at 1772 to 1773. The statements by Juror 11, just like when you hear them in voir dire, this is not only an abuse of discretion. These are facts found by the jury. She actually also noted at 1792, she found Juror 11 quite sincere. Is that a finding of fact? So it's clearly erroneous? Is that the standard? Yes, Your Honor. It's a finding of fact. When she found his demeanor at 1792 to be sincere, this is along the lines of the findings of fact that the judges routinely make when they're looking at Batson or Georgia, or just determining whether the juror in front of them can be fair and impartial, because that's ultimately a judge's call, and it's a credibility call. And she found he was quite sincere from her own observations of Juror 11. And then she gave a complete instruction to the jury, don't concern yourself with anything other than the evidence in this case. I've done a thorough inquiry. There is the aiding and abetting 920C under Rosemond. The evidence was sufficient both for Pinkerton and for actual possession. There were instructions given on each. In its first close, the government focused on actual possession. It wasn't until its second close that it mentioned the evidence of advanced planning and advanced knowledge was more than sufficient, because every time they went to a small drive-thru branch bank with two female tellers, every time they came up in the early morning and accosted the second teller coming in, Myron Saunders' role was to provide the muscle to get that teller to open the door. Lamar Nero's role was the money man to get the money out of the safe. And as to that June 14th robbery, there was no equivocation whatsoever by the witness who saw them running away with guns. And this can go to all three of the theories, but particularly actual possession. But you could use it as well to find aiding and abetting. And indeed in Rosemond, the Supreme Court remanded so that the court below could address whether there was sufficient evidence on the other theories or even sufficient evidence of advanced planning. Felicia Moran was not equivocal. They say she was equivalent. In fact, she was in parking enforcement. She first noticed that their van was illegally parked by a hydrant. That caught her attention. Then she said, I've seen two guys running away with guns, 1467. But that's not all she said. She said, I thought it was a movie. I couldn't figure out what it was. She said they were running down Elysian Fields with guns. I think that would catch anyone's attention. And that's at 1468. So the witness of the guns at the crime at pages 1467 to 68 was not equivocal. Twice said they were running with guns down Elysian Fields, catch anyone's attention. And so for those reasons, you can use that testimony on any of the three theories because if Lamar Nero had a gun on his person and he was carrying a backpack during the crime, well, he had advanced knowledge. And another thing that distinguishes this from Rosemond is the jury already found, as to count two, that Mr. Nero, as well as Mr. Saunders, had engaged in an armed bank robbery with a firearm as to this particular robbery. So it's a little bit different because you didn't have a drug trafficking situation where the drugs go bad and they're not sure who's shooting. Here, there's already the count two underlying conviction is armed robbery with a firearm. And so then it just becomes a question of advanced knowledge. And the running down the streets with guns really answers all three things, and it's particularly whether Lamar Nero had knowledge because Felicia Moran, who is a trained observer in parking enforcement, said they were running down Elysian Fields. I think that would catch anyone's attention, and that's at 1468. Your Honors, for these reasons and those set forth more fully in the government's brief, unless there are further questions, the government will rest at this time asking the Court to affirm the convictions of Lamar Nero and Myron Saunders and to confirm their sentences. Thank you. Thank you, Ms. Copes. Mr. Plashens, we're from UN Rebuttal. You have three minutes. There is nothing more fundamental in our law than the state's burden of proof. In this case, based on the way the jury verdict form was laid out, it effectively removed that presumption. That is our position. We think that the language in the form made it unclear to the jury as to what its task was, and therefore, as a matter of law, it was an error, even though it's a plain error. It's noticeable. It's correctable by this Court remanding for a new trial with a proper verdict form, and then we'll know how it affected the jury or didn't affect the jury. This verdict form is not correct, and it removed every presumption that our clients had when they were in the trial. Thank you. Thank you. Mr. Seibert, you have one minute. Thank you, Your Honor. The error with respect to the aiding and abetting instruction as to the 924C count is different in terms of the plain error analysis from the substantive count of conviction, because the substantive count, when you add the fact that a firearm was used, all it does is affects the statutory maximum. It has no bearing on the mandatory minimum, because there is no mandatory minimum for this type of bank robbery. By contrast, when you have that finding with respect to a 924C, it's five extra years. That's a third of this man's prison sentence is being driven by a jury conviction based on an erroneous jury instruction, and the government invites you to affirm based on the possibility that the jury convicted on another theory, but they still stop short of saying that there's not a reasonable probability that the jury did that. So for those reasons, I ask you just for the limited relief of a new trial. Thank you. Thank you, sir. Mr. Plessens, you were court appointed, and the court expresses its appreciation for your service. I'll call the next case of the day, and that is James Johnson versus PPI Technology Services.